BROWN COUNTY COOPERATIVE AS-SOCIATION, A Cooperative Association, Plaintiff and Appellee,

v.

RASMUSSEN–KING CATTLE CO., INC., A Corporation and E. E. Rasmussen, doing business as Rasmussen-King Cattle Co., Defendants,

and

H. I. King, Defendant and Appellant.

No. 12916.

Supreme Court of South Dakota.

Argued April 17, 1980.

Decided Dec. 30, 1980.

Carlyle Richards of Ronayne & Richards, Aberdeen, for plaintiff and appellee.

Kennith L. Gosch of Bantz, Gosch & Cremer, Aberdeen, for defendant and appellant.

HENDERSON, Justice.

## ACTION

This is an appeal from an order of summary judgment in favor of appellee (Brown County Cooperative Association) and against appellant (King) for the non-payment of a promissory note. A default judgment was entered by the court below against the Rasmussen-King Cattle Company, Inc. (corporation). No judgment was entered against Rasmussen as an individual nor has appellee motioned for one. We affirm.

## FACTS

Appellant and Rasmussen are the sole partners of the corporation herein involved. The corporation executed a promissory note to appellee for $5,933.34 on April 27, 1976. On the same day, appellee assigned the note to the Aberdeen National Bank (bank). On the back of the note were the signatures of Rasmussen, appellant, and appellee, in that order. The bank held the note and attempted collection for over two years. During this period, at the request of appellant, several extensions were given by the bank for making payment on the note. Signatures of both appellant and Rasmussen appear on the face of each extension agreement. After its execution, the note was altered by the addition of: two telephone numbers in the upper left-hand corner of the note; someone's initials near the middle of the note; the words "Rasmussen-King Cattle" near the bottom of the note; and a longhand notation near the middle of the note which reads: "$2,000 to be paid when machinery is sold. Talked to Bob Gruman on this." Appellant argues that the note was further altered without his consent on January 22, 1979, when the interest rate was increased from 10.3% to 12.0%.

The bank eventually sold the note back to appellee. Through mistake or inadvertence on the part of the bank, however, the note was sent to appellant instead of appellee. After various attempts to collect on the note, appellee filed suit with the circuit court on December 27, 1978. Appellee prayed for judgment against appellant, corporation, and Rasmussen for $5,636.26, the amount due on the note as of October 12, 1978. A motion for summary judgment was made by appellee on August 20, 1979. The matter was submitted to the circuit court on affidavits. A hearing was held on September 10, 1979, pursuant to appellee's motion for summary judgment. On September 11, 1979, the circuit court ruled that there was no genuine issue as to any material fact relating to appellee's claim against appellant, and that appellee was entitled to summary judgment as a matter of law. Appellant asserts on appeal that there were several genuine issues of material fact presented to the court below, therefore the circuit court's order of summary judgment was in error.

## ISSUE

Under the facts presented, did the circuit court err by ordering summary judgment in favor of appellee? We hold that it did not.

## DECISION

■ A motion for summary judgment will be granted only if there is no genuine issue as to any material fact. *Poppenga v. Cramer*, 250 N.W.2d 278 (S.D.1977). Also, the evidence must be viewed most favorable to the non-moving party. *Janklow v. Keller*, 90 S.D. 322, 241 N.W.2d 364 (1976). We must determine whether appellee has met its burden of demonstrating that no materi-

al issue of fact existed concerning appellant's liability on the promissory note.

Appellant maintains that there are three genuine issues of material fact which render summary judgment inappropriate under these circumstances. First, appellant contends that he signed the note as an accommodation party at the behest of the bank; consequently, his endorsement did not make him liable to appellee. Appellant signed the face of the note in his capacity as vice-president of the corporation. Accordingly, under SDCL 57A–3–403 and SDCL 57A–1–201(35), the corporation is the maker of the note.

■ SDCL 57A–3–415(1) provides: "An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it." SDCL 57A–3–415(5), however, states: "An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party." It is appellant's theory that he is not liable to appellee because appellee is the party accommodated. We do not agree. The party accommodated is the one to whom the name of the accommodation party is loaned; in this case, the corporation. SDCL 57A–3–415(1); *State Bank of Greeley v. Owens*, 502 P.2d 965, 31 Colo.App. 351 (1972); *Blake v. Coates*, 294 So.2d 433, 292 Ala. 351 (1974). Since the party accommodated was the corporation, and not, as appellant contends, appellee, his argument under SDCL 57A–3–415(5) is devoid of merit. Thus, appellant is liable to appellee under SDCL 57A–3–415(1) as an accommodation party. Although it does not appear appellant is a guarantor on the note since the words "payment guaranteed" did not accompany his endorsement as required by SDCL 57A–3–416(1), the status of a guarantor would not negate his liability as an accommodation party to appellee. Uniform Commercial Code § 3–415, Comment 1. No genuine issue of material fact was presented to the circuit court as to appellant's liability as an accommodation party.

Appellant contends that the circuit court erred by refusing to consider parol evidence to establish the actual order in which the promissory note was endorsed. The endorsements on the note appeared in the following order: E. E. Rasmussen, appellant, and appellee by Myron Walth, appellee's manager. Appellant alleges that he in fact endorsed the note after appellee and, therefore, parol evidence should have been admitted to establish the actual order of the endorsements. SDCL 57A–3–414(2) states:

Unless they otherwise agree endorsers are liable to one another in the order in which they endorse, which is presumed to be the order in which their signatures appear on the instrument.

SDCL 57A–3–414(1) states:

Unless the endorsement otherwise specifies (as by such words as "without recourse") every endorser engages that upon dishonor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his endorsement to the holder or to any subsequent endorser who takes it up, even though the endorser who takes it up was not obligated to do so.

Parol evidence is admissible to show that the endorsers did not endorse in the order indicated on the instrument. Uniform Commercial Code, § 3–414 (counterpart to SDCL 57A–3–414) Comment 4. If appellant's contention was correct, Rasmussen would, in fact, be liable on the note since appellee was the immediate subsequent endorser who took up said obligation.

■ SDCL 57A–3–414 is not, as appellant urges, dispositive of the issue. When appellee repurchased the note from the bank, it became a transferee under SDCL 57A–3–201(1). SDCL 57A–3–201(1) states:

Transfer of an instrument vests in the transferee such rights as the transferor has therein, except that a transferee who has himself been a party to any fraud or illegality affecting the instrument or who as a prior holder had notice of a defense or claim against it cannot improve his position by taking from a later holder in due course.

As a transferee, appellee assumed the rights the bank had against appellant and appellee could assert such rights for payment on the note as the bank had thereunder. Appellee stood in the shoes of the bank and thus the order of endorsements appearing on the note is irrelevant. Appellant, however, asserts that the fact appellee did not have possession of the note precludes it from asserting its rights under under SDCL 57A-3-201(1). Affiant Marvin Peterson attested that appellee did pay the bank the amount of the note plus interest and that the note and accompanying form letter was mistakenly sent to one of the original defendants rather than appellee. We quote from the Peterson affidavit:

Any indication of payment of said obligation relates only to the payment by [appellee] to the bank, and as stated above, defendants have not paid said obligation as of today and it was never the bank's intention to state or imply otherwise.

Appellant's answer or affidavit does not maintain that he, Rasmussen, or the corporation has paid the note.

 Under SDCL 57A-3-201(1), however, a transferee cannot improve his position if he has been a party to any fraud or illegality affecting the instrument. In his affidavit to resist appellee's motion for summary judgment, appellant alleges the affirmative defense of "illegality" on the part of appellee. When opposing a motion for summary judgment, a party may not rely on the general allegations and denials of his answer and affidavits, but must set forth specific facts sufficient to raise a genuine issue of fact. SDCL 15-6-56(e); *Hughes-Johnson Co. v. Dakota Midland Hospital,* 86 S.D. 361, 195 N.W.2d 519 (1972). Thus, the mere mention of "illegality" in appellant's affidavit is not enough to deprive appellee of the rights it acquired pursuant to SDCL 57A-3-201(1). Accordingly, there is no genuine issue of material fact regarding the actual order in which the endorsements occurred and the circuit court did not err by refusing to admit evidence thereon.

Appellant further contends that the note was altered after his endorsement and as a consequence he is discharged ·from assuming liability thereunder. SDCL 57A-3-407(2) is determinative of this contention. This statute provides:

(2) As against any person other than a subsequent holder in due course

(a) Alteration by the holder which is *both fraudulent and material* discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense;

(b) No other alteration discharges any party and the instrument may be enforced according to its original tenor, or as to incomplete instruments according to the authority given. (Emphasis supplied.)

 Appellant claims appellee unilaterally increased the interest rate on the note from 10.3% to 12.0% and, therefore, such alteration was material and fraudulent. However, the comment under Uniform Commercial Code § 3-407 (counterpart to SDCL 57A-3-407) states: "Assent to the alteration given before or after it is made will prevent the party from asserting the discharge." *See also International Harvester Co. of America v. Woods,* 56 S.D. 9, 227 N.W. 372 (1929). The interest rate on the note was increased on January 22, 1979, in conjunction with the third extension of time for payment on the note which appellant himself had requested. All extension agreements on the note were signed by appellant. It appears that as a condition to the extension agreement of January 22, 1979, the bank increased the interest rate on the note. Appellant did not allege that the increased interest rate was fraudulently incorporated by appellee. Thus, it cannot be contended that a genuine issue of fact existed regarding the increased interest rate of January 22, 1979.

 Appellant further argues that the addition of two telephone numbers, someone's initials, the words "Rasmussen-King Cattle," and a fourteen-word longhand notation on the note constitute a material and fraudulent alteration. SDCL 57A-3-407(1)

defines a material alteration as "[a]ny alteration of an instrument . . . which changes ·the contract of any party thereto in any respect[.]" The aforementioned alterations do not affect the original tenor of the note. Also, appellant does not contend that these alterations were fraudulently made by appellee. Since SDCL 57A-3-407(2) requires alterations to be *both* fraudulent and material for a discharge to occur, appellant's contentions regarding the alterations of the note are without merit.

■ Finally, appellant maintains that the circuit court's order of summary judgment erroneously prevented him from asserting several affirmative defenses included in his amended answer. These defenses were estoppel, failure of consideration, illegality, laches, accord and satisfaction, payment, release, and waiver. Appellant did not factually delineate these defenses either in his pleadings or affidavit. As we have previously discussed, the non-movant must set forth specific facts which show that there is a genuine, material issue for trial. *Hughes-Johnson Co. v. Dakota-Midland Hospital,* supra; SDCL 15-6-56(e).

The circuit court's summary judgment in favor of appellee is affirmed.

WOLLMAN, C. J., and DUNN and FOSHEIM, JJ., concur.

MORGAN, J., dissents.

MORGAN, Justice (dissenting).

I dissent.

The majority opinion states that the party accommodated by appellant was the corporation. This utterly ignores appellant's affidavit which states in essence: "Affiant's signature was affixed . . . at the request of the officers of the then Aberdeen National Bank, presumably as a requirement of the bank taking assignment . . . from the plaintiff to the bank. . . . [A]t no time did affiant guaranty payment of said note to Brown County Coop. . . . Affiant's signature on [the note] was simply an accommodation to the bank." This statement was given considerable credibility in the affidavit of Marvin Peterson, officer of the First Bank, Aberdeen, formerly Aberdeen National Bank, wherein he states: "Where notes of this nature are executed by corporations such as defendant R–K Cattle Company, *it is the policy of affiant's employer, the bank, to require the signature of the officers of the corporation, as guarantors* and defendant H. I. King was so advised by affiant; *that Mr. King thereupon affixed his signature to the reverse side of said note as guarantor* without hesitation or objection[.]" (Emphasis added.) Since the guaranty ran to the bank *on the assignment by Brown County Coop,* I would denominate the Coop as the accommodated party rather than the corporation. At the very best it is a question of fact that is in dispute and summary judgment should not lie.

The signature referred to as an endorsement in the majority opinion is the signature first referred to as an accommodation. Since the Coop had actual notice of the purpose of the signature it cannot improve its position by taking from the bank. SDCL 57A-3-201(1).

We are required to view the evidence most favorable to the nonmoving party; in this case, appellant. Appellee's own evidence, the Peterson affidavit, shows that at most appellant was a guarantor to the bank. When Brown County Coop purchased back the note, it was not a holder in due course under SDCL 57-12-2 or transferee under SDCL 57-11-1, and therefore not entitled to the benefits that the majority would accord it. The Coop had notice that the note was overdue and that appellant had signed as a guarantor to accommodate the Coop in negotiating the note to the bank.*

Had the bank proceeded against appellant there would be no question of his liability and summary judgment would have been appropriate. Under the circumstances

---

\* Parol evidence is admissible to show the true status of the endorsers where the holder is not a holder in due course.

in this case, however, I believe that summary judgment in favor of appellee was entirely inappropriate.

I would reverse and remand for a trial on the issues of accommodation and endorsement.